UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ESTATE OF KYLAN TAYLOR LEEPER; JAMESHA MURPHY, b/n/f of K.L., a minor,<br><br>　　Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., ET AL.,<br><br>　　Defendants. | Civil Action Number 3:24-CV-1197<br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Jeffery S. Frensley |

## JOINT DISCOVERY DISPUTE STATEMENT

### I. NATURE OF THE DISPUTE

On February 21, 2025, the Court entered an Initial Case Management Order ("ICMO") in this matter. (Docket Entry 34). Regarding discovery, the ICMO provides: "The parties shall complete all written discovery and depose all fact witnesses on or before **October 20, 2025**." (*Id*. at 4) (emphasis in original). Plaintiffs Estate of Kylan Taylor Leeper and Jamesha Murphy served written discovery requests on Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC (collectively, "CoreCivic"), Jermaris Porter ("Porter"), and Vincent Vantell ("Vantell") on September 29, 2025. Defendants lodged various objections, including that the discovery requests were untimely per the ICMO.

Plaintiffs contend that the ICMO provides: "The parties shall exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)1 on or before **March 19, 2025**." (*Id*.) (emphasis in original). Defendants failed to provide their initial disclosures until over *seven weeks past that deadline*. Plaintiffs believe that Defendants' refusal to meaningfully respond violates the spirit of cooperation contemplated by Federal Rules of Civil Procedure 1, 26, 33, and 34 and the good-faith obligations of Local Rule 37.01(a). Defendants submit that the 75 interrogatories and 75 requests

for production were served beyond the deadline established in the ICMO and are objectionable for various other reasons and likewise note that Plaintiffs are bringing this discovery issue to the Court over two months beyond the September 19, 2025, deadline for discovery-related motions contained in the ICMO. (*Id*. at 5). Nevertheless, Defendants have offered to provide information and produce documents in an effort to avoid bringing this discovery issue to the attention to the Court and also have offered to present multiple current and former CoreCivic employees for deposition, yet Plaintiffs still have demanded "full-throated responses to [their] written discovery with complete information and responsive documents."

Plaintiffs believe they are entitled to complete responses to their discovery requests and on November 12th , 2025, proposed to limit the scope of their requests in the spirit of good-faith compromise. The Defendants rejected Plaintiffs' proposed compromise. (See Plaintiff's November 12th , 2025 letter attached hereto as Exhibit C).

## II. **PLAINTIFFS' POSITION**

Plaintiff is prosecuting a drug case laid out clearly in the amended complaint. Plaintiff contends that Defendants' refusal to respond fully to all discovery requests—because they did not have a full 30 days to respond *prior* to the discovery cutoff—is contrary to the cooperative intent of the Federal Rules and the history of this case. Importantly, Plaintiff would have gladly given an additional 30 days (or more if necessary) for the Defendants to respond had they requested an extension. The proof of Plaintiff's good faith is clearly demonstrated by the history of the parties' interaction prior to this impasse.

Plaintiffs have previously extended significant professional courtesies, including multiple extensions of Defendants' disclosure deadlines. Specifically, Defendants delayed nearly 43 days beyond their agreed deadline to provide initial disclosures in the spring of 2025. Additionally, after putting considerable attention into filing and responding to the Motion to Dismiss, both sides

conserved effort and resources from January to August of 2025 while the Court considered Defendants' lengthy motion to dismiss, which was denied on August 27, 2025. Because several of the original Defendants were dismissed, the nature of the case changed significantly. After the Court's order, Plaintiff reconfigured its position and then narrowly tailored the discovery requests in keeping with the Court's findings.

In addition, Defendants' delay in producing any significant discovery has resulted in the cancellation of the deposition Defendant Vince Vantell (former TTCC warden) that was scheduled for November 24th and the deposition of Don Stewart (former chief of security at TTCC) that was scheduled for November 13th. There are other depositions scheduled and the nearly 4-week delay in providing discovery threatens these schedules.

In this context, Plaintiffs argue that the timing of service of discovery has caused no prejudice, especially since Defendants had full notice of the discovery scope and have offered no reason they could not seek a brief extension if timing was the real issue. Plaintiffs assert that Defendants' identical objections across all three response sets—CoreCivic, Vantell, and Porter— are boilerplate and noncompliant with Rule 33(b)(4) and Rule 34(b)(2)(B), which require specific grounds for objection.

Plaintiffs identified the deficiencies in Defendants discovery responses the day after being served with them. (See Plaintiffs' deficiency letter to Defendants dated October 30, 2025, attached hereto as Exhibit B). Plaintiffs have engaged in phone calls, many E-Mails, and letters in their attempt to resolve this matter short of Court involvement.

Within the past few weeks, federal indictments have been released confirming the allegations in the amended complaint and the fact of a drug operation at TTCC. Defendants are understandably trying to stall and delay. However, such delay is improper. Plaintiff maintains that the discovery requests are central to the case, addressing contraband drug activity, staffing, and

3

policies at Trousdale Turner Correctional Center leading to the overdose death of inmate Kylan Leeper. Plaintiffs have requested that Defendants withdraw their objections and supplement responses by agreement, without further delay.

## III. DEFENDANTS' POSITION

### A. Factual and Procedural Background

This case arises out of the death of Kylan Leeper ("Leeper") from a drug overdose. At the time of his death, Leeper was a prisoner of the State of Tennessee and was incarcerated at the Trousdale Turner Correctional Center ("Trousdale"). CoreCivic, Inc. operates Trousdale under contract with Trousdale County, Tennessee ("Trousdale County"), and CoreCivic of Tennessee, LLC employs certain of the individuals who work at Trousdale, including Vantell who served as the Warden and Porter who served as an Assistant Warden. Relevant here, Leeper experienced a medical emergency on October 6, 2023, and, despite medical personnel responding and administering Narcan, he later was pronounced dead from a fentanyl overdose. Plaintiffs seek to shift responsibility for Leeper's drug overdose death and to hold Defendants liable by contending that Trousdale is understaffed and suffers from a drug smuggling problem such that Leeper would not have died had Defendants protected him from the introduction of illegal drugs into Trousdale.

On February 19, 2025, the Court held an Initial Case Management Conference ("ICMC"). (Docket Entry 26). Thereafter, on February 21, 2025, the Court entered an ICMO to govern the progression of this matter. (Docket Entry 34). Plaintiffs were permitted to serve discovery requests on Defendants as early as February 19, 2025, upon completion of the ICMC. FED. R. CIV. P. 26(d) (noting that the parties may engage in discovery after completion of the Federal Rule of Civil Procedure 26(f) conference). Plaintiffs, however, delayed for over seven months and served 75 interrogatories and 75 requests for production on Defendants on September 29, 2025. This was untimely per the ICMO. Indeed, the ICMO mandates that the parties "shall ***complete***" all written

4

discovery on or before October 20, 2025. (Docket Entry 34 at 4) (emphasis added). This necessarily means that Plaintiffs should have served the discovery requests on Defendants at least thirty days before the discovery deadline of October 20, 2025, as the Middle District repeatedly has acknowledged. *Burwell v. Portfolio Recovery Associates, LLC*, 2024 WL 5356140, at *1-2 (M.D. Tenn. Apr. 15, 2024); *Clair v. Zinc*, 2022 WL 4594120, at *3 (M.D. Tenn. Sept. 29, 2022). The Court has explained: "Generally, the discovery deadline [set by a court's scheduling order] specifies the date on which all discovery must be completed; therefore, any document requests must be served at least 30 days prior to the discovery deadline." *U.S. v. Carell*, 2011 WL 2078023, at *8 (M.D. Tenn. May 26, 2011). Plaintiffs, however, delayed for over seven months and did not serve the discovery requests until September 29, 2025, after the requisite deadline.

Defendants promptly brought the untimely discovery requests to Plaintiffs' attention through correspondence dated October 6, 2025.[1] Defendants informed Plaintiffs that the discovery requests were untimely and reminded Plaintiffs that requests served at the tail end of discovery are meant to finish-up loose ends on discovery rather than to initiate discovery after months of delay. Defendants then invited Plaintiffs to reach out "to discuss this matter and the challenges that the untimely-served discovery requests present." Plaintiffs did not contact Defendants and, indeed, made no effort to address the issues that Defendants raised. Defendants, therefore, responded to the discovery requests on October 29, 2025, and lodged multiple appropriate objections, including that the discovery requests were untimely per the ICMO. Other objections include the reality that the discovery requests are vague and ambiguous as to scope, that the discovery requests are overbroad, unduly burdensome, and seek information and documents that are not relevant and are not proportional to the needs of the case, that the discovery requests seek information and documents regarding other inmates protected by the Health Insurance Portability and

---

[1] The October 6, 2025, correspondence is attached hereto as <u>Exhibit A</u>.

Accountability Act ("HIPAA") and T.C.A. § 10-7-504(a)(1), and that the discovery requests seek information and documents protected from discovery by the attorney-client privilege, peer review privilege, work product doctrine, and/or Federal Rule of Civil Procedure 26(b). While Defendants will not state the objectionable nature of each discovery request, some highlights provide guidance.

- Plaintiffs ask that CoreCivic identify all complaints, grievances, or incident reports submitted by inmates, staff, or third parties regarding contraband drugs at Trousdale from 2022 through 2024. To answer this interrogatory, CoreCivic would have to interview every employee and inmate to determine if they made or received any such complaint and would have to review, among other things, every email or written communication, every inmate grievance, and every log book entry from Trousdale for any mention of contraband drugs. This effort and time would not be expended for a reasonable purpose because the fact that an inmate may have complained about contraband drugs in a different housing unit than where Leeper was located and during a different timeframe than when Leeper was incarcerated does not have any bearing on the allegations in this lawsuit.

- Plaintiffs ask that CoreCivic produce all documents concerning staffing levels, turnover rates, and vacancies at Trousdale from 2022 through 2024. To respond to this request for production, CoreCivic would have to locate and review all employee communications regarding work absences, all employee time logs, all shift rosters, and all communications from CoreCivic employees regarding staffing levels and efforts to increase staffing over three years. It would take an exorbitant amount of effort and time, and this effort and time would not be expended for a reasonable purpose because the mere existence of a vacancy at any point over three years could not reasonably have impacted Leeper or the allegations in this lawsuit.

- Plaintiffs ask that Porter identify every action that he took from 2022 through 2024 to mitigate or prevent contraband drugs at Trousdale. CoreCivic engages in a multitude of actions to prevent contraband from entering Trousdale and to locate contraband once it has entered the confines of the facility, and Porter fully participated in and supported these efforts during his tenure at Trousdale. Given this, Porter cannot possibly identify what essentially amounts to a description of every action that he took during his tenure to prevent contraband from entering Trousdale and to locate contraband once it entered the confines of the facility. This necessarily would include, by way of example, every inmate or cell search that Porter requested or about which Porter was aware, regardless of its relation to Leeper, his housing unit, or the dates of his incarceration at Trousdale. It would take an extreme amount of effort and time to locate this information, and it ultimately would not have any bearing on the allegations in this lawsuit.

- Plaintiffs ask that Vantell identify all communications that he had with a CoreCivic employee, a member of law enforcement, or a Tennessee Department of Correction employee regarding contraband drugs at Trousdale from 2022 through 2024. CoreCivic engages in a multitude of actions to prevent contraband from entering

6

Trousdale and to locate contraband once it has entered the confines of the facility, and Vantell fully participated in and supported these efforts during his tenure at Trousdale. Thus, to provide this information, Vantell would have to review every communication that he had with any individual during his tenure at Trousdale to determine if the communication mentioned contraband drugs. This effort and time would not be expended for a reasonable purpose because the fact that Vantell may have asked the canine handler to have the drug-detecting canine search a housing unit where Leeper was not located on a day that Leeper was not incarcerated at Trousdale does not relate in any manner to the allegations in this lawsuit.

The parties subsequently engaged in multiple telephonic and written communications in an effort to resolve these issues. Defendants previously produced a number of documents and materials to Plaintiffs because they were identified in Defendants' initial disclosures and have continued to produce such documents and materials as they have supplemented their initial disclosures. The documents and materials that Defendants have produced to Plaintiffs include documents regarding Leeper and his incarceration at Trousdale, documents regarding Leeper's overdose death and video footage from his housing unit on the day of his overdose death, and policies and training materials that are relevant to the allegations in this lawsuit. Defendants likewise have offered to provide the following information and documents, all in an attempt to work with Plaintiffs and to avoid bringing any discovery issues to the Court:

- information regarding any investigation of Vantell with respect to contraband drugs, drug smuggling, or drug trafficking;

- the identities of individuals with knowledge of Leeper's overdose on October 6, 2023;

- information regarding known or suspected methods by which contraband drugs have been introduced into Trousdale;

- Vantell's direct reports from January through October 2023;

- Porter's direct reports from January through October 2023;

- the identity of any CoreCivic employee who was arrested, disciplined, or terminated for bringing or attempting to bring contraband drugs into Trousdale from January 1, 2023, through April 1, 2024;

7

- the actions that CoreCivic has taken to prevent the introduction of contraband drugs into Trousdale and to detect any contraband drugs within the confines of Trousdale;

- assistance provided to inmates with substance abuse issues, the actions that CoreCivic has taken to mitigate exposure to contraband drugs, and the actions that CoreCivic has taken to prevent the introduction of contraband drugs into Trousdale;

- the identity of any CoreCivic employee who was arrested, disciplined, or terminated for bringing or attempting to bring contraband drugs into Trousdale from January 1, 2023, through April 1, 2024;

- the table of contents for the policies in place at Trousdale along with any policies that Plaintiffs subsequently request, provided that they are relevant to the allegations in this lawsuit;

- the training schedule from Trousdale along with any training materials that Plaintiffs' subsequently request, provided that they are relevant to the allegations in this lawsuit;

- Porter's personnel file;

- Vantell's personnel file;

- Porter's training file;

- Vantell's training file;

- any responsive documents that Porter and Vantell have in their possession, provided that they are relevant and proportional to the needs of the case;

- complaints from lawsuits that were filed against Porter and/or Vantell arising out of their tenure at Trousdale;

- problem solving notices for any CoreCivic employee who was arrested, disciplined, or terminated for bringing or attempting to bring contraband drugs into Trousdale from January 1, 2023, through April 1, 2024; and

- training materials regarding the use of Narcan at Trousdale.

Plaintiffs ultimately rejected Defendants' offer in this regard. They argued that Defendants somehow waived their objections to the discovery requests, demanded that Defendants withdraw their objections to the discovery requests, and demanded "full-throated responses." The "full-throated" discovery that Plaintiffs seek would take months for Defendants to locate, review, and produce and would require that Defendants expend an unproportional and unreasonable amount of

effort and time on information and documents that do not have any bearing on the allegations in this lawsuit. While it may have been possible for Defendants to provide some of this discovery if served in February 2025, it is not possible at this late juncture in the discovery period. Add to this the reality that Plaintiffs have brought these issues to the Court over two months after the deadline for filing discovery-related motions. (Docket Entry 34 at 5) ("All discovery-related motions shall be filed no later than **September 19, 2025**.") (emphasis in original).

B.     Law and Argument

District courts have broad discretion to narrow and dictate the sequence of discovery pursuant to Federal Rule of Civil Procedure 26. *Goad v. Mitchell*, 297 F.3d 497, 505 n.7 (6th Cir. 2002). The Sixth Circuit has observed that "the desire to allow broad discovery is not without limits, and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Surles*, 474 F.3d at 305). Simply put, the district court "must balance the 'right to discovery with the need to prevent fishing expeditions.'" *Id*. at 236-37 (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012)) (internal quotation marks omitted). A ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown. FED. R. CIV. P. 26(b); *Appalachian Regional Healthcare, Inc. v. U.S. Nursing Corporation*, 2017 WL 9690401, at *1 (E.D. Ky. Sept. 1, 2017).

Plaintiffs could have served discovery requests on Defendants on or shortly after February 19, 2025, but they inexplicably delayed for over seven months and did not serve the discovery requests until beyond the deadline in the ICMO. Plaintiffs have offered justifications for their

9

failure in this regard, but those justifications fall flat. Plaintiffs first contend that the parties "conserved efforts and resources from January to August 2025" after Defendants filed a Motion to Dismiss on January 31, 2025. (Docket Entry 27). This is inaccurate. Defendants timely served discovery requests on Plaintiffs and timely requested the two depositions that they need to defend themselves in this matter and engaged in a host of other efforts to prepare their defense. The parties were not permitted to do otherwise as the Court stated in no uncertain terms in the ICMO: "Discovery is not stayed during dispositive or other motions, unless ordered by the Court." (Docket Entry 34 at 4-5). Plaintiffs next contend that after the Court's ruling on Defendants' Motion to Dismiss the "nature of the case changed significantly" and that Plaintiffs were "forced to reconfigure [their] position and then narrowly tailor[] the discovery requests in keeping with the Court's findings." This is inaccurate. The Court did not change the nature of the case when it ruled on Defendants' Motion to Dismiss. The Court simply dismissed the supervisory liability claims against Trousdale County and the Trousdale County officials who were named in the Amended Complaint. (Docket Entry 39 at 24). The primary claims in this matter -- that is, that CoreCivic, Porter, and Vantell allowed inmates at Trousdale to have unfettered access to drugs and that this unfettered access led to Leeper's fatal overdose -- remain. (*Id.*). Plaintiffs further contend that they would have allowed Defendants an additional thirty days to respond to their discovery requests and to produce responsive documents. This argument misses the mark. Defendants cannot possibly locate, review, and provide the extraordinary amount of information and the extraordinary number of documents that Plaintiffs have requested. It would take multiple months, not weeks. While portions of the information and documents could have been located, reviewed, and provided if Plaintiffs timely served their discovery requests, it cannot reasonably be done at this late date in the discovery process. Plaintiffs finally contend that they rescheduled the depositions of two fact witnesses -- Don Stewart ("Stewart") and Vantell. Defendants were

prepared to proceed with the depositions and willingly agreed to reschedule them at Plaintiffs' request. In so doing, Defendants have made clear that Stewart and Vantell (and Porter who is scheduled to be deposed on December 3, 2025) are prepared for their depositions if Plaintiffs simply will provide dates for the depositions. Plaintiffs have not done so.

Defendants have attempted to reach a compromise with Plaintiffs, offering to provide information and produce documents beyond the designated deadline. Plaintiffs, however, have rejected Defendants' proposals and recently have demanded "full-throated responses" from Defendants -- in other words, responses to the 75 interrogatories and the 75 requests for production that Plaintiffs served on Defendants beyond the deadline. This is an unreasonable request that is not grounded in the reality of the situation in which the parties find themselves, weeks beyond the conclusion of the fact discovery period and on the cusp of various other deadlines.

### IV. EFFORTS TO RESOLVE THE DISPUTE

Defendants first raised their objections to the discovery requests through written correspondence dated October 6, 2025, a few days after they received the discovery requests. Plaintiffs responded and issued deficiency notices on October 30 and November 12, 2025, requesting supplementation and offering to confer at length to narrow or clarify requests. Thereafter, counsel for the parties have exchanged multiple written communications and have conferred via telephone.

On November 20, 2025, Plaintiffs demanded "full-throated responses to [their] written discovery with complete information and responsive documents," and Defendants thereafter informed Plaintiffs that it was neither possible nor reasonable, particularly at this stage of the proceedings. Plaintiffs proposed a Joint Discovery Dispute Statement in good faith to avoid a formal motion to compel. Despite these efforts, the parties remain at an impasse regarding whether

11
1604263080.1
Case 3:24-cv-01197   Document 50   Filed 12/01/25   Page 11 of 13 PageID #: 446

Defendants must respond substantively and in their entirety to the 75 interrogatories and 75 requests for production served on September 29, 2025.

## V. RELIEF SOUGHT

Plaintiffs request that the Court direct Defendants to withdraw their blanket "untimely per ICMO" objections and provide good-faith responses as proposed in the November 12th, 2025 letter of compromise within a reasonable time.

Defendants request that the Court find that Plaintiffs impermissibly served discovery requests outside the deadline established in the ICMO, that Defendants' objections, including to the timeliness of the discovery requests, are proper, deny Plaintiffs' request for full discovery and conclude that the information and documents that Defendants offered to provide sufficiently meet Defendants' obligations in this context.

Respectfully submitted,

/s/ Marc A. Walwyn
Marc A. Walwyn (#22431)
marc@walwynlegal.com
412 Georgia Avenue, Suite 102
Chattanooga, Tennessee 37403
(423) 954-7266
(423) 763-1615

*Counsel for Plaintiffs Estate of Kylan Taylor Leeper and Jamesha Murphy, b/n/f of K.L., a Minor*


/s/ Erin Palmer Polly
Joseph F. Welborn, III (#15076)
joe.welborn@klgates.com
Erin Palmer Polly (#22221)
erin.polly@klgates.com
Terrence M. McKelvey (#36531)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

*Counsel for Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC, Jermaris Porter, and Vincent Vantell*